Vincent CUSANO, et al., Plaintiff(s),

v.

Gene KLEIN, et al., Defendant(s).

No. CV 97–4914–AHM(EX).

United States District Court,
C.D. California,
Western Division.

Aug. 20, 2003.

Jeffrey S Benice, Jeffrey S Benice Law Offices, Costa Mesa, CA, Stephen P Collette, Little & Collette, James J Little, J J Little & Associates, Marina del Rey, CA, for Vincent Cusano, individually dba Vinnie Vincent Music dba Streetbeat Music fka Vinnie Vincent, plaintiff.

John H Lavely, Jr, Brian G Wolf, Paul Karl Lukacs, Lavely & Singer, Los Angeles, CA, for Gene Klein, Paul Stanley, Kiss Co., Gene Simmons Worldwide, Inc., Simstan Music Ltd., Kisstory Ltd., Polygram Records, Inc., Kiss Catalog Ltd., defendants.

Brian G Wolf, Paul Karl Lukacs, Lavely & Singer, Los Angeles, CA, for Stanley Eisen, defendant.

Barry E Mallen, Manatt Phelps & Phillips, Los Angeles, CA, for Horipro Entertainment Group, a California Corporation, defendant.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

MATZ, District Judge.

### INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment on Plaintiff's second, third, fourth, fifth, ninth, and tenth claims for breach of fiduciary duty, fraud, constructive fraud, negligent misrepresentation, conversion, and imposition of constructive trust. For the reasons elaborated below, Defendants' motion is GRANTED.[1]

### MOTION STANDARDS

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evi-

---

1. On August 11, 2003, the Court Clerk provided a draft of this Order to the parties via facsimile. The deadline to request a hearing was August 18, 2003. Neither party requested a hearing.

dence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transportation Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir.2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (*citing Celotex*, 477 U.S. at 322, 106 S.Ct. 2548).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.; Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

## BACKGROUND

Unless otherwise noted, the following facts are undisputed. Plaintiff in this action, Vincent Cusano, was employed by the musical group "KISS" as a guitarist and songwriter, from around April 1982 to April 1984. Klein Decl. ¶ 2. Cusano entered into a written employment agreement with KISS, a partnership, on September 23, 1982. Plaintiff's Separate Statement of Genuine Issues ¶ 1 ("SGI"). The parties agreed that the agreement would be governed by New York law. Klein Decl., Ex. A at 18 ("Agreement"). In December 1983, Defendant KISS Company ("KISS Co."), the KISS partnership's successor in interest, entered into an agreement with Cusano ("Employment Agreement"), SGI ¶ 2, that incorporated by reference the terms of the September 1982 agreement. Agreement at 4. The Employment Agreement gave KISS Co. one hundred percent ownership rights of Cusano's compositions on the "Lick it Up" album ("Compositions"). *Id.* at 5. In return, Cusano was entitled to his "songwriter's share" of income derived from the worldwide exploitation of the Compositions. *Id.* The Employment Agreement also provided for KISS Co. to render quarterly accounting statements to Cusano. *Id.* at 8. Since around September 1984, Defendant Polygram Records, Inc. ("Poly-

gram") has rendered quarterly accounting statements directly to Cusano for his share of "domestic mechanical" royalties. Rogers Decl. ¶ 3. It appears that KISS Co. may have rendered accounting statements to Cusano before that time, and continued to render accounting statements to him after Polygram began to do the same. *See* Vail Decl. ¶ 4.

Cusano commenced this suit in July 1997. As a result of prior rulings, his remaining claims apply only to the "Lick it Up" Compositions. The thrust of his allegations is that Defendants have improperly accounted for the royalties due him, contrary to their representations that they would faithfully administer the royalty account.

## ANALYSIS

### A. Summary Judgment Is Warranted Because of the Burden of Proof

 Generally, the plaintiff in a civil case has the burden of proving all the elements of her cause of action. 57 N.Y. Jur.2d *Evidence and Witnesses* § 163. Cusano argues, however, that Defendants have the burden of proving that they properly accounted for the royalties due him. Opp. at 2. Since they have this burden, he argues, "their failure to offer any such evidence compels the denial of their summary judgment motion." *Id.* He relies on a California case, *Wolf v. Superior Court,* 107 Cal.App.4th 25, 130 Cal.Rptr.2d 860 (2003), involving an author's right to allegedly unpaid royalties from a film and television production company.[2] The *Wolf* court held in dicta that in cases of "contingent compensation ... where essential financial records are in the exclusive control of the defendant who would benefit from any incompleteness, public policy is best

served by shifting the burden of [proving satisfaction of its payment obligation] to the defendant." 107 Cal.App.4th at 35, 130 Cal.Rptr.2d 860. Notably, the author in that case had attempted to exercise his right to audit the production company's records, but each time the defendant had failed to provide access to the pertinent records. *Id.* at 28, 130 Cal.Rptr.2d 860.

 New York courts as well have held that "it is generally inappropriate to place the burden of proof on a party in [a] case where the facts governing the resolution of the controversy are within the exclusive knowledge of the opposing party." *Johnson v. City of New York,* 302 A.D.2d 463, 756 N.Y.S.2d 67, 69 (N.Y.App.Div.2003) (citations omitted). However, various factors play a role in the decision to shift the burden of proof from the party pleading a cause of action. 5 N.Y. Practice Series *Evidence in New York State and Federal Courts* § 3.2. These factors include fairness, practicality and convenience, access to evidence, and policy considerations. *Id.*

Cusano's argument that Defendants have the burden of proving that they properly accounted to him is unpersuasive. The Employment Agreement gave Cusano an audit right to verify the accuracy of his royalty statements. Agreement at 2. Unlike the *Wolf* plaintiff, Cusano has never exercised this audit right, even in the last six years since he commenced this action to recover the allegedly unpaid royalties. Vail Decl. ¶ 5; Rogers Decl. ¶ 5. Cusano has proffered no evidence showing that he even attempted to audit Defendants' accounting records and was refused. Although Defendants are in possession of the records, it cannot be said that Cusano has no access to the evidence given his con-

---

**2.** Although the Employment Agreement is governed by New York law, California law can be instructive, especially in view of Southern California's large entertainment in-

dustry and the many disputes that California courts adjudicate between artists and record or film companies.

tractual audit right. Moreover, shifting the burden of proof when Cusano chose to ignore his audit right would result in unfairness, and would reward irresponsible and derelict conduct. In this case, it is appropriate to leave the burden of proving all the elements of his claims exactly where New York law places it—on Cusano.[3]

■ Defendants are entitled to summary judgment on all six claims because Cusano has failed to show genuine issues for trial. Each of his claims is premised on Defendants' allegedly false royalty statements, but he has utterly failed to produce any evidence whatsoever of inaccuracies in the accounting, other than his own declaration that Defendants have never confirmed to him whether the sums reflected in his statements are accurate. Cusano Decl. ¶ 2. In fact, Cusano's opposition largely attempts to demonstrate that his various claims "are properly stated." That is not the proper standard on a summary judgment motion. Moreover, each of his claims fails for the additional reasons elaborated below.

### B. Cusano's Claim for Breach of Fiduciary Duty

■ Cusano must first prove that Defendants owed him a fiduciary duty before he can establish a breach of that duty. *See Weiss, Peck & Greer v. Robinson,* 2003 WL 1396436, at *5 (S.D.N.Y. Mar.19, 2003). Courts applying New York law have routinely refused to recognize a fiduciary relationship between artists and the companies obligated to publish or license their works and pass on royalties. *See, e.g., Arnold Productions, Inc. v. Favorite Films Corp.,* 298 F.2d 540, 542 (2nd Cir. 1962) (agreement between motion picture owner and distributor, giving distributor

the exclusive right to exploit films and requiring it to pay a percentage of revenues to the owner, was not a fiduciary relationship, but one of "simple contract"); *Sony Music Entertainment Inc. v. Robison,* 2002 WL 272406 at *3 (S.D.N.Y. Feb.26, 2002) (contract between record company and recording artists that provided for the record company to collect royalties and pass them on to the artists did not create a fiduciary relationship between the parties) (citing *Rodgers v. Roulette Records,* 677 F.Supp. 731, 739 (S.D.N.Y.1988); *Archie Comic Publications, Inc. v. DeCarlo,* 141 F.Supp.2d 428, 432–33 (S.D.N.Y. 2001)); *Cooper v. Sony Records Int'l,* 2001 WL 1223492 at *5 (S.D.N.Y. Oct.15, 2001). Instead, courts have characterized the relationship between the parties as a purely commercial, arms-length business transaction. *See Robison,* 2002 WL 272406 at *3; *Rodgers,* 677 F.Supp. at 739.

California law is in accord. In *Wolf,* the plaintiff assigned to Walt Disney Pictures and Television ("Disney") the rights to his novel and the character upon which the novel was based, while Disney agreed to pay the plaintiff royalties. 107 Cal. App.4th at 28, 130 Cal.Rptr.2d 860. The court, affirming dismissal of the plaintiff's breach of fiduciary duty claim, held that "the contractual right to contingent compensation in the control of another has never, by itself, been sufficient to create a fiduciary relationship where one could not otherwise exist." *Id.* at 31, 130 Cal. Rptr.2d 860. Moreover, the fact that the plaintiff reposed his trust and confidence in Disney to properly account for royalties did not create a fiduciary relationship. *Id.; Robison,* 2002 WL 272406 at *3. "Every contract requires one party to repose an element of trust and confidence in the

---

**3.** Even in *Wolf* the Court noted that "the availability of evidence" to the plaintiff is a factor to consider in determining whether the normal allocation of the burden of proof should be altered. 107 Cal.App.4th at 35, 130 Cal.Rptr.2d 860.

other to perform." *Wolf,* 107 Cal.App.4th at 31, 130 Cal.Rptr.2d 860.

■ Accordingly, KISS Co.'s contractual duty to collect royalties, account for them and pass them on to Cusano did not create a fiduciary relationship. Similarly, when Polygram began rendering accounting statements to Cusano in September 1984, it did not have, or thereby create, a fiduciary relationship with him. Cusano argues, however, that Defendants are his fiduciaries because the Employment Agreement includes more than just an obligation to collect and account for royalties—it includes a provision giving KISS Co. power of attorney:

> You [Cusano] hereby irrevocably appoint us [KISS Co.] as your true and lawful attorney-in-fact to execute, verify, acknowledge and deliver any and all instruments or documents which you shall fail or refuse to execute, verify, acknowledge or deliver to effectuate the intent of this agreement or any of the terms and conditions thereof.

Agreement at 8; Opp. at 3. Cusano is correct that an attorney-in-fact is an agent owing fiduciary duties to his principal. *See* 2A N.Y. Jur.2d *Agency and Independent Contractors* § 63 (2003). Like other written instruments, however, a power of attorney should be construed according to the plain and reasonable meaning of its words, and neither restricted nor enlarged. *Benderson Development Co. v. Schwab Bros. Trucking, Inc.,* 64 A.D.2d 447, 409 N.Y.S.2d 890, 896 (N.Y.App.Div.1978); 2A N.Y. Jur.2d *Agency and Independent Contractors* § 73.

In this case, the provision does not make KISS Co. Cusano's attorney-in-fact in all matters. KISS Co. is his attorney-in-fact, and therefore his fiduciary, only for the limited purpose of executing documents that he fails or refuses to execute and that are necessary to effectuate the intent of the Employment Agreement. *See* Restatement (Second) of Agency § 13 (2003) ("An agent is a fiduciary with respect to matters within the scope of his agency"). Cusano alleges that Defendants breached their fiduciary duty in rendering inaccurate royalty statements and payments. Compl. ¶ 199. He cannot now enlarge the scope of KISS Co.'s agency to say that it is his fiduciary for these purposes. The act of rendering payments does not at all implicate KISS Co's power of attorney to execute documents on behalf of Cusano. Moreover, Polygram does not have even a limited fiduciary relationship with Cusano because it was not a party to the Employment Agreement and did not agree to act as his attorney-in-fact. *See* Agreement at 4–8; see this Court's 9/15/98 Order at 12 (granting Polygram's Motion for Summary Adjudication on Cusano's eleventh claim for breach of contract).

For the foregoing reasons, Defendants are entitled to summary adjudication on Cusano's breach of fiduciary duty claim.

## C. Cusano's Claims for Constructive Fraud and Imposition of Constructive Trust

■ In order to recover damages for constructive fraud, Cusano must prove as one element the existence of a confidential or fiduciary relationship with Defendants. *Franco v. English,* 210 A.D.2d 630, 620 N.Y.S.2d 156, 160 (N.Y.App.Div.1994); *Del Vecchio by Del Vecchio v. Nassau County,* 118 A.D.2d 615, 499 N.Y.S.2d 765, 768 (N.Y.App.Div.1986). To impose a constructive trust, Cusano also must establish a confidential or fiduciary relationship. *Sharp v. Kosmalski,* 40 N.Y.2d 119, 386 N.Y.S.2d 72, 75, 351 N.E.2d 721 (1976); *Cooper,* 2001 WL 1223492 at *5.

■ Cusano does not have claims for either constructive fraud or constructive trust against Polygram because he does not have a fiduciary relationship with it. As stated above, Polygram did not agree

to act as his attorney-in-fact. Cusano has proffered no evidence that Polygram has even a contractual relationship with him. His arms-length business relationship with the record company simply will not support these claims. *See Rodgers,* 677 F.Supp. at 739 (recording artist did not have a claim for constructive trust against his record company because no fiduciary relationship existed between the parties); *Cooper,* 2001 WL 1223492 at *6 (same).

Neither does Cusano have claims for constructive fraud or constructive trust against KISS Co. He argues that "Defendants are liable to [him] for constructive fraud to the extent they have improperly accounted to him as fiduciaries." Opp. at 4. Similarly, Cusano argues that "[i]f Defendants have in fact breached their fiduciary duties owed to [him], the remedy [of constructive trust] is appropriated [sic]." *Id.* at 5. But KISS Co. was not his fiduciary in accounting for royalties, nor did it breach a fiduciary duty if it improperly accounted for royalties. Thus, KISS Co. cannot be held liable as a fiduciary for these acts.

### D. Cusano's Claims for Fraud and Negligent Misrepresentation

To establish a claim for fraud, one element Cusano must prove is Defendants' knowing misrepresentation of material fact. *Salles v. Chase Manhattan Bank,* 300 A.D.2d 226, 754 N.Y.S.2d 236, 239 (N.Y.App.Div.2002). In order to establish a claim for negligent misrepresentation, Cusano need prove that Defendants negligently made a materially misleading or false representation. *See Balaber-Strauss v. N.Y. Telephone (In re Coin Phones, Inc.),* 203 B.R. 184, 200 (Bankr. S.D.N.Y.1996).

A fraud claim fails when it merely states an alleged breach of contractual duties and does not concern representations that are collateral or extraneous to the parties' contract. *Sforza v. Health Ins. Plan of Greater New York,* 210 A.D.2d 214, 619 N.Y.S.2d 734, 736 (N.Y.App.Div. 1994); *Robison,* 2002 WL 272406 at *2. The same is true of claims for negligent misrepresentation. *See Fourth Branch Assocs. Mechanicville v. Niagara Mohawk Power Corp.,* 235 A.D.2d 962, 653 N.Y.S.2d 412, 415 (N.Y.App.Div.1997); *Best Payphones, Inc. v. Empire State Payphone Assoc.,* 272 A.D.2d 139, 708 N.Y.S.2d 11, 12 (N.Y.App.Div.2000). "It is a well established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.,* 70 N.Y.S.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y.1987).

Cusano cannot maintain his claims for fraud and negligent misrepresentation against KISS Co. because they merely state a breach of contractual duties. The Employment Agreement entitled Cusano to his songwriter's share of income derived from the exploitation of the Compositions. Agreement at 5. The thrust of his claims for fraud and negligent misrepresentation is that Defendants falsely represented the amount of royalties due him. Compl ¶¶ 212, 246. The claims against KISS Co. do not involve representations collateral or extraneous to the Employment Agreement.

The allegations against Polygram are not based on or derivative of a breach of contract because Polygram was not a party to the Employment Agreement. 9/15/98 Order at 12. Nevertheless, as stated above, the claims fail because Cusano has not provided evidence that Polygram misrepresented a material fact, either knowingly or negligently, by rendering inaccurate accounting statements.

### E. Cusano's Claim for Conversion

In his claim for conversion, Cusano must prove (1) that he had "legal ownership of a specific identifiable piece of property" and (2) Defendants exercised dominion over it in defiance of his rights. *Di Siena v. Di Siena*, 266 A.D.2d 673, 698 N.Y.S.2d 93, 95 (N.Y.App.Div.1999) (quotation omitted); *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419, 433 (S.D.N.Y. 1998) (plaintiff had cause of action for conversion of money, but he had to prove that he had ownership, possession, or control of the money before its conversion). Cusano's claim for conversion cannot be maintained if it is "predicated on a mere breach of contract." *MBL Life Assurance Corp. v. 555 Realty Co.*, 240 A.D.2d 375, 658 N.Y.S.2d 122, 124 (N.Y.App.Div.1997); *ESI, Inc.*, 995 F.Supp. at 433.

In *Rodgers,* the court found that a record company was not liable for conversion to a recording artist who asserted claims for allegedly unpaid royalties. 677 F.Supp. at 736–37. The court found that the record company owned the artist's recordings and merely held the proceeds from sales of its own property, "part of which [it] was contractually obligated to pass onto [the artist] in the form of royalties." *Id.* at 736. Additionally, the court found that the artist could not assert his conversion claim because it merely stated a breach of contractual rights. *Id.* at 737.

Defendants are entitled to summary judgment since Cusano cannot establish that he has ownership rights in the royalties allegedly due him. KISS Co. "exclusively own[s] and control[s] one hundred percent (100%) of all right, title, and interest [in the Compositions], including the copyrights, all rights under such copyrights, and all rights to the so-called 'pub-

lisher's share' of income derived from the worldwide exploitation of such copyrights."[4] Agreement at 2. As in *Rodgers,* KISS Co. held the proceeds from the sale of its own property, the Compositions. When Polygram took over administration of the royalty account, the proceeds were still the property of KISS Co. Cusano never had possession or control of the proceeds; he was only entitled to his songwriter's share in the form of royalties. Moreover, Cusano's conversion claim is predicated on a breach of contractual duties.

### F. Contractual Limitation Period

Even if Cusano's claims had survived summary judgment, they would be subject to a two-year contractual limitation period. The Employment Agreement gives him two years to object to royalty accounting statements in writing. *Id.* at 2, 34. If he does not, the statements "shall constitute an account stated as to all royalties due for the period covered by such statement." *Id.* at 34.

Similar agreements shortening the statute of limitations for a claim have been approved by the New York Court of Appeals. In *John J. Kassner & Co. v. City of New York*, 46 N.Y.2d 544, 415 N.Y.S.2d 785, 389 N.E.2d 99 (N.Y.1979), the contract between the parties provided that a claim based upon the contract must be commenced within six months after final payment for services rendered. 46 N.Y.2d at 548, 415 N.Y.S.2d 785, 389 N.E.2d 99. The court found that this contractual limitations provision did not conflict with public policy, "but, in fact, more effectively secure[d] the end sought to be attained by the statute of limitations." *Id.* at 551, 415

---

4. Compare this to the September 1982 agreement between KISS Co. and Cusano regarding the compositions on the album, "Creatures of the Night." This states that the parties "shall jointly own an undivided fifty (50%) interest in the Compositions, including all of the worldwide right, title, and interest." Klein Decl. ¶ 5, Ex. B at 48.

N.Y.S.2d 785, 389 N.E.2d 99 (quotation omitted).

By filing this action in July 1997, Cusano effectively provided written objection to the accounting statements provided by Defendants. He had not objected at any time before. Vail Decl. ¶ 5; Rogers Decl. ¶ 5; *see* Opp. at 6. Thus, his claims would be limited to those statements rendered on or after July 1995, two years before he objected.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment[5] is GRANTED. Defendants have filed a Proposed Judgment including the award of attorney's fees "for prevailing on Cusano's claim for violation of the right of publicity under California Civil Code section 3344." Before the Court enters that Proposed Judgment, each side shall file a memorandum (not to exceed three pages) setting forth the basis for its respective contentions as to whether such fees may be awarded, and if so how they are properly to be calculated, given that it is likely that Defendants' counsel cannot provide specific evidence as to the amount of time they devoted to that claim only. The parties' submissions shall be filed by not later than September 2, 2003.

IT IS SO ORDERED.

---

5. Docket No. 352